**Opinion issued December 22, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00583-CV

————————————

**THE HONORABLE MARK HENRY, COUNTY JUDGE
OF GALVESTON COUNTY, Appellant
V.**

**THE HONORABLE LONNIE COX, JUDGE OF THE 56TH DISTRICT
COURT OF GALVESTON COUNTY, Appellee**

On Appeal from the 56th District Court
Galveston County, Texas
Trial Court Case No. 15-CV-0583

# **O P I N I O N**

In this interlocutory appeal,[1] appellant, the Honorable Mark Henry, County Judge of Galveston County, challenges the district court's[2] order granting appellee, the Honorable Lonnie Cox, Judge of the 56th District Court and Local Administrative Judge of Galveston County, a temporary injunction suspending the termination of the employment of Bonita Quiroga, the Galveston County Director of Judicial Administration, directing the reinstatement of her employment, and enjoining Henry and "his agents, servants, and representatives, and those acting in concert with him," from taking action against Quiroga, her department, and her staff. In four issues, Henry contends that the "temporary injunction order has become moot on appeal," the district court lacked subject-matter jurisdiction to grant the temporary injunction, the district court "did not validly exercise its supervisory jurisdiction" in granting the temporary injunction, and the temporary injunction is otherwise invalid.

We affirm.

## **Background**

In his amended petition, Judge Cox alleges that in 2000, the judges of the Galveston County District Courts and County Courts at Law "selected" Quiroga as

---

[1]     *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (Vernon Supp. 2015).

[2]     The Honorable Sharolyn Wood, sitting by assignment.

2

Director of Judicial Administration ("DJA") and the Galveston County Commissioners Court approved their selection. Although her DJA duties were "overwhelmingly judicial in nature," Quiroga also performed certain duties for the county judge and commissioners.

Fourteen years later, on July 24, 2014, Judge Henry, who had taken office in 2011, purported to unilaterally terminate Quiroga's employment as DJA. In the months that followed, certain Galveston County District Court Judges, County Court at Law Judges, and a Probate Court Judge (collectively, "the judges"),[3] speaking through Judge Cox, the Local Administrative Judge, endeavored to reinstate Quiroga to her position. At Cox's request, the Office of Court Administration of the State of Texas ("OCA") sought an opinion in the matter from the Office of the Attorney General of the State of Texas ("OAG").

In August 2014, Peri Bluemer, Chief Human Resources Officer for Galveston County, acting at Judge Henry's direction, publicly posted Quiroga's position to

---

[3]     The Honorable Lonnie Cox, Judge of the 56th District Court and Local Administrative Judge; the Honorable Kelly Neves, Judge of the 10th District Court; the Honorable John Ellisor, Judge of the 122nd District Court; the Honorable Anne B. Darring, Judge of the 306th District Court; the Honorable Michelle Slaughter, Judge of the 405th District Court; the Honorable Jack D. Ewing, Jr., Judge of the County Court at Law No. 3; the Honorable Barbara Roberts, Judge of the County Court at Law No. 2; and the Honorable Kimberly Sullivan, Judge of the Galveston County Probate Court.

solicit applications, conducted telephone interviews with candidates, and began scheduling interviews with the three "finalists."

On September 24, 2014, the day that Bluemer had scheduled final interviews to begin, Judge Cox issued an order directing that Judge Henry and the commissioners cease searching for a replacement for Quiroga. Cox concluded that Henry's termination of Quiroga's employment as DJA was "void" because the judges, not Henry and the commissioners, had the authority to appoint and terminate the employment of court personnel; Henry's termination of Quiroga's employment and his proposed selection of a replacement violated the Separation of Powers Provision of the Texas Constitution[4] and infringed on the inherent powers of the Galveston County Judiciary; and Henry's actions constituted an illegal attempt to influence the appointment of a person to a position authorized by the commissioners court for the department of another district, county or precinct officer in the county.[5]

Days later, Judge Henry filed in this Court a petition for a writ of mandamus, requesting that this Court vacate Judge Cox's order. After Henry notified the OAG of the filing of his mandamus petition, it declined to issue an opinion on the issue of Henry's purported termination of the employment of Quiroga. And after this Court

---

[4]    *See* TEX. CONST. art. II, § 1.

[5]    *See* TEX. LOCAL GOV'T CODE ANN. § 151.004 (Vernon 2008).

4

denied Henry mandamus relief, he filed a petition for a writ of mandamus in the Texas Supreme Court, which also denied him relief.

Subsequently, OCA crafted a proposed compromise for the judges to submit to Judge Henry and the commissioners. Under the proposed compromise, two separate positions would be created: (1) "Director of Court Administration" ("DCA") and (2) a "public safety position." Judge Henry and the commissioners requested that the judges submit a supplemental proposal regarding the salary for the newly proposed DCA position. On May 12, 2015, the judges attended a "compromise meeting workshop," at which they submitted their recommendation that the newly proposed DCA position encompass certain duties and have an annual salary of no less than $85,000 and no more than $120,000.

On May 29, 2015, after Judge Henry and the commissioners had not acted, the judges issued an order, concluding that it was "in the best interest of the Court system and the citizens of Galveston County to reinstate the position of Justice Administrator," which was to be filled by Quiroga, effective June 8, 2015. And Judge Cox issued an order to "carry out the reinstatement of Quiroga," directing Henry to provide her with a key to her office, a personal computer with employee email access, and an office telephone. Cox further ordered that Henry direct "Human Resources to allow [Quiroga] to complete all paperwork necessary for her to be

reinstated as a full time employee" and the "Treasurer to reinstate and pay [Quiroga]."

However, when Quiroga, accompanied by some of the judges and Galveston County Sheriff H. Trochessett, arrived at the Galveston County Justice Center on the morning of June 8, 2015, they found that the lock on Quiroga's office door had been changed. After the Sheriff used his own key to admit Quiroga to her office, she discovered that her personal computer and telephone had been removed.

The next day, Quiroga arrived at the Justice Center to find that, once again, the lock on her office door had been changed and she had been locked out. After Judge Cox arranged for her to work on her personal computer in an empty office space, Judge Henry scheduled a meeting with the commissioners court to discuss the "[a]uthority of county and [d]istrict [c]ourt judges to appoint administrative employees" and the filing of litigation against the judges and a judicial-conduct complaint against Cox.

Also on June 9, 2015, Judge Cox filed in the 405th District Court of Galveston County his original petition in the instant case, seeking injunctive relief. The district court subsequently granted a temporary restraining order, prohibiting Judge Henry and "all acting in concert with [him]" from taking any official action on the agenda posted for the special meeting of June 9, 2015. In response, Henry tabled matters in the commissioners court until June 13, 2015. And, at a June 13, 2015 "special

6

meeting," Henry and the commissioners "authorized" a reduction in the salary for Quiroga's position from $113,000 to $63,695. Even though, as noted by Cox, Henry and the commissioners, by comparison, had previously authorized a salary of $65,000 for a candidate who had been appointed to perform just "one" of Quiroga's former duties.

In his amended petition, Cox sought temporary and permanent injunctive relief and a declaration that the "purported firing of [Quiroga] on July 24, 2014 was void and is void at the present time"; "subsequent purported changes to the salary scale and administrative organization of the Galveston County Department of Justice Administration" are "void"; and Quiroga's salary is "as of the date of final judgment the same rate . . . as was applicable on July 23, 2014."

In making his request for a temporary injunction, Judge Cox asked the district court to preserve the "last, actual, *peaceable* noncontested status that preceded the controversy." He asserted that Judge Henry's actions were causing harm to the Galveston County district and county courts, and he argued that the harm is "imminent and ongoing" because Henry was continuing to "reassign" department employees. Cox further sought "to invoke statutory rights of non-interference"[6]; "enforcement of constitutional rights and powers under the inherent power of courts

---

[6] *See* TEX. LOC. GOV'T CODE ANN. § 151.004.

to demand and receive adequate funding, personnel, and facilities"[7]; and to "enforce the separation of powers" and "supervisory control" of district courts over Henry and the commissioners court.[8]  And he requested an order enjoining "Henry and all those acting in concert with him" from:

1. Taking any action on the agenda items Nos. [enumerated], posted for the special meeting of June 9, 2015 and June 13, 2015, or any future action concerning those items[.]

2. Barring entrance by [Quiroga] to that portion of the Galveston County Justice Center previously occupied by her as [DJA.]

3. Preventing or impeding in any way the provision of computer services to [Quiroga] . . . [.]

4. Instructing any employee of Galveston County to disregard any directive, instruction, or request of [Quiroga] relating to the administration . . . [.]

5. Appointing or employing any person other than [Quiroga] to perform the duties of specified above as the job description of the [DJA.]

. . . .

7. Employing or authorizing any person to fill the duties of the posts purportedly created and pertaining to justice administration in the meeting of June 13, 2015.

8. Reassigning or relocating any employee who occupies a position or duties which, as of July 23, 2014, reported to [Quiroga] as [DJA], including but not limited to . . . Gracia, and Deputy Clint Purcell.

---

[7] *See Mays v. Fifth Court of Appeals*, 755 S.W.2d 78, 79 (Tex. 1988); *Vondy v. Comm'r's Court of Uvalde Cty.*, 620 S.W.2d 104, 109–10 (Tex. 1981).

[8] *See* TEX. CONST. art. II, § 1, art. V, § 8.

In his brief, filed in opposition to Judge Cox's request for a temporary injunction, Judge Henry contended that Cox was seeking, "by way of temporary injunction," the "very remedy (on many of the same grounds)" that Quiroga seeks "in her earlier filed lawsuit."[9] He asserted that if the district court granted Cox the temporary injunction, it would be awarding Quiroga the ultimate relief that she seeks, i.e., reinstatement of her employment. Henry further argued that Cox's lawsuit is moot because the commissioners court had already "abolished" Quiroga's DJA position and, by order issued June 13, 2015, approved the judges' application to appoint Quiroga to a new "court administrator position." And he argued that Cox could not invoke the judges' statutory right of non-interference because "Quiroga was never appointed to her position as Director" pursuant to statute.[10]

At the temporary-injunction hearing, the district court admitted into evidence copies of a 1995 commissioners court meeting agenda and minutes, which included "authorizing the employment of a Professional Services Director and Justice Administration Director submitted by the County Judge"; a May 1, 2000 letter from the Honorable David E. Garner, Judge of the 10th District Court of Galveston County, to then Galveston County Judge Jim Yarborough; and a May 8, 2000 commissioner's court agenda.

---

[9]     *Bonnie Quiroga v. Galveston Cty., Tex.*, No. 14-CV-1289 (212th Dist. Ct., Galveston Cty., Tex., filed Dec. 9, 2014).

[10]    *See* TEX. LOC. GOV'T CODE ANN. § 151.004.

9

The minutes of the April 13, 1995 "Special Called Session" of the commissioners court reflects that the then commissioners court voted to appoint Ed Wells, who was then "employed as Court Administrator for the District Courts of Galveston County," to "the Director of Justice Administration." The commissioners agreed that "[t]he duties of the position will include continuing helping the District Courts Administration, but also broadening that responsibility to the County Courts at Law and also the current Justices of the Peace throughout the county." The minutes do not reflect that Wells was to perform any duties for the commissioners court.

After Wells had subsequently resigned his position, Judge Garner, the Local Administrative Judge, acting on behalf of three district court judges, two county court at law judges, and a probate judge, submitted to then County Judge Yarborough a May 1, 2000 letter, stating that "after careful consideration of the applications for the position of Director of Justice Administration for Galveston County," the Galveston County judges collectively recommended that Bonnie Quiroga be appointed to fill the vacancy. They further requested that the "matter be placed on the [commissioners court's] agenda for action." And the May 8, 2000 commissioners court agenda includes "Consideration of appointment of Director of Justice Administration submitted by the Administrative Law Judge." The commissioners court subsequently ratified Quiroga's appointment.

The district court also admitted into evidence a 2005 "Job Description Certification," signed by Quiroga, and various excerpts of "Program Budget[s]" from fiscal years 2004 and 2009 through 2012. The excerpts contain, for each year, an organizational chart, which shows the "commissioners court" in a position over the department of "Justice Administration," but includes in a position below the department only the duties of "Court Collections," "Justice of Peace Task Force," "Law Library," and "Pre-Trial Release." The 2005 "Job Description Certification" reflects that Quiroga reported to the "County Judge." However, the "Position Summary," contained in the description, states that she "manages, coordinates, directs, and plans the operations and activities of all courts." And it lists her "Essential Functions" as follows:

- Oversees the Texas Fair Defense Act-Galveston County Plan to ensure compliance with all procedures.
- Prepares and presents monthly activity and status reports, as requested or required.
- Provides on-call assistance to judiciary, county jail, and related county departments.
- Develops, implements, and oversees collection procedures for the county courts.
- Coordinates and schedules courtroom security.
- Plans, schedules, and implements requests by visiting judges, including courtroom space, lodging, and travel.
- Audits and processes claims for payment of indigent representation.
- Manages caseloads; develops and implements more efficient procedures for processing dockets and caseflow.

11

- Determines eligibility of attorneys to serve under the Texas Fair Defense Act-Galveston County Plan.

- Maintains statistical data and records on caseflow and case management.

- Develops and implements automated documents for use by the court.

- Provides for the comfort, convenience, and security of jurors.

- Develops and maintains court calendar.

- Plans and assigns space for court hearings and court-related services.

- Assists in the preparation, review, and implementation of legislation affecting the courts and related county departments.

- Assesses and analyzes the court's current and future technology needs.

- Plans and coordinates training for court employees.

- Inspects property in court, arranging for maintenance, repairs, and replacement as necessary.

- Directs the administrative operations of the Justice Administration Department, including development of all department and court budgets, audit and approval of department expenditures and payroll, supervision and discipline of employees, and related duties.

- Performs other related duties as assigned.

Judge Henry testified that he took office as Galveston County Judge on January 1, 2011 and is a member of the commissioners court.[11] From 2000 to July 24, 2014, Quiroga was the DJA and reported to the county judge and the commissioners court. He explained that "because it became convenient over time,"

---

[11] The County Judge is the "presiding officer" of the County Commissioners Court. TEX. CONST. art. V, § 18(b).

the DJA position had both judicial and non-judicial responsibilities. Henry admitted that on July 24, 2014, he terminated Quiroga's employment solely on his own initiative as county judge, and not on behalf of the commissioners court. Although he had discussed terminating Quiroga's employment with one of the other commissioners, he did not raise the matter at a commissioners court meeting, nor did he confer with the judges before terminating her employment. Henry also conceded that neither he nor the commissioners court had given Quiroga any prior job-performance reviews, nor had there been any documented dissatisfaction with her job performance. However, he opined that it was "in the public's best interest" to amend the 2015 fiscal-year budget and restructure and reorganize certain County departments. He noted that after he had terminated Quiroga's employment, "it was important to have that role filled," and he assigned Bluemer to "spearhead[]" the effort.

Judge Henry further testified that for "months" after he had terminated Quiroga's employment, he and the judges had discussed the "possible mechanism by which [they] could appoint personnel." And the judges "agreed" that the county law library, building facilities, personal bonds, and collections were "exclusively in the domain" of the commissioners court. In May 2015, after the judges submitted an application to the commissioners court seeking a "pay grade" for the new position of DCA in the range of $85,000 to $120,000, Henry assigned his chief of staff, Tyler

13

Drummond, to "find internal and external comparable[]" positions. Based on Drummond's research, Henry and the commissioners court set an annual salary for the new DCA position at $63,695. And the district court admitted into evidence a June 9, 2015 commissioners court order, which shows that they set the salary range for the new DCA position at $57,705 to $63,695.

Although the commissioners court had, prior to Judge Henry's purported termination of Quiroga's employment, approved her DJA salary of $113,000, it cut the salary for the new DCA position by $49,305 because, as per Henry, "all" the commissioners court "functions" were removed. He claimed that the new DCA position would have "approximately 25 percent of the responsibility that the old [DJA] position had," based on the number of people reporting to the new DCA, although the number of judges to whom the DCA would report was not considered, nor was the gravity and time commitment of one duty over another. Henry noted that the "Pre-Trial Release Department" had been renamed the "Personal Bond Office." And he had hired one of the September 2014 candidates at an annual salary of $65,000 to perform pre-trial bond requests.

Drummond testified that Judge Henry, in May 2015, asked him to assist in determining the salary range for the new DCA position. He explained that he based his research on the job description that the judges had submitted in their May 12, 2015 application. And he noted that the commissioners court duties removed from

14

the new DCA position included the law library, personal bond office, building facilities, and collections, which together had constituted a "significant portion" of the duties of the DJA. In arriving at his salary recommendation for the new DCA position, Drummond utilized various online resources and census data from Galveston and Cameron counties, and he contacted three of the counties listed in the judges' salary survey, as well as others. He presented his findings to the commissioners court, and he drafted portions of their June 9, 2015 order setting the salary range for the new DCA position.

Drummond explained that he graduated from Vermont Law School in 2012 and does not hold a Texas law license, has prior experience working for the Vermont Legislature, and took a statistics class and several economics classes in college. Drummond admitted that, in determining salary ranges for Galveston County positions, he does not apply any methodology that is generally accepted by counties in setting such salary ranges.[12]

---

[12] During cross-examination, the following discussion took place:

THE COURT: I'm sitting here listening to this gentleman's expert testimony with absolutely no *Daubert* foundation at all. I have no idea if this man—I know he has a law degree, but he's never passed a Bar exam. He's never practiced in a court. He's never worked in a court. I haven't heard anything yet that has told me that this gentleman has any concept of how a court works, how court administration works, or how the laws of Texas impact on Judges requiring to do their job. . . . If he has knowledge, if he studied, if he knows the laws,

15

Bluemer testified that in early August 2014, Judge Henry "asked" her "to find candidates for [Quiroga's] position as it stood, Director of Justice Administration." After she publicly posted the position, "probably a hundred, maybe 150" people applied for the job. Bluemer selected the "10 to 15" candidates who "fit the role." She then conducted telephone interviews, narrowed the field to "four," and set up interviews with Henry and Ryan Dennard, Galveston County Commissioner,

and he has by training, experience, or background any expertise to provide testimony on this, let me hear it. If not, let's move on.

. . . .

And if he's saying that he has done a study that complies with any methodology that makes this a valid study, other than picking out the information he wanted in his presentation, I'd be glad to hear his qualifications on being able to do that. I've heard he had statistics. I heard he had economics, but I'm an economics major. Okay? So let's prove him up, or let's move on. . . .

[Defense Counsel]: Mr. Drummond, what experience do you have with regard to reviewing salaries, in general, doing salary analysis?

[Drummond]: I assisted the County—actually, took the lead on hiring our Chief Information Officer, Chief Human Resources Officer, our Chief Financial Officer, all of which were country searches, nationwide searches.

[Defense Counsel]: In each of those job searches, in determining the salaries, did you use [a] methodology that is generally accepted by Counties in trying to determine salary ranges for those individuals?

. . . .

[Drummond]: No.

16

Precinct One. Ultimately, Henry and Dennard chose three "final" candidates, none of whom had experience in court administration. One candidate "had formerly been an attorney" and "had a very passionate story to tell about his [previous] drug addiction." Bluemer noted, however, that he "had a very strong passion for the judicial system" and "knew some of our players." She also noted that "two members of the [district attorney's] office" had applied for the position, but were eliminated as "way underqualified." And a former Galveston County judge had applied, but did not "make the cut" for "the final three." On cross-examination, Bluemer admitted that she was not familiar with the court system and had no previous experience working in a courthouse or with any court administrators.

Judge Cox testified that up until July 2014, his and Quiroga's offices were located one floor apart at the Justice Center, he "saw her almost every day," and they "talk[ed] all the time." And he testified at length about her many essential duties to the judges in Galveston County. For instance, Quiroga "did the budget for all of the Courts, except the Probate Court; and she did the budget for the Department of Justice Administration." And she was "instrumental" in developing, and "responsible" for administering, the judiciary's "Fair Defense Plan," which provides counsel to indigent parties. A significant portion of her duties also involved the provision of interpreters. Noting that he was not warned prior to the termination of her employment, Cox chronicled the events, as outlined in his amended petition,

surrounding Judge Henry's lock-out of Quiroga from her office, removal of her personal computer and telephone, "filing [of] criminal trespass warnings or notices" against her, and attempts to conduct interviews for her replacement.

Judge Cox explained that after he went to OCA for assistance with a compromise, the judges submitted a proposal to the commissioners court. And the district court admitted into evidence the May 12, 2015 application submitted by the "Administrative Judges of the Galveston County District Courts, County Courts at Law, and Probate Court" to the commissioners, requesting approval to hire a "Director of Court Administration" with an annual salary range of $85,000 to $120,000. The judges' application includes a job description and a "Salary Survey," which provides the salary ranges, varying from a low of $45,894 to a high of $149,488, for court administrators in Bexar, Collin, Dallas, Denton, Tarrant, and Williamson counties. The survey also indicates the number of courts to which each administrator reports. Judge Cox noted that the court administrators in Lubbock and Montgomery counties have annual salaries of $110,000 and $100,000, respectively.

Judge Cox further testified that at the May 12, 2015 workshop, Judge Henry expressly stated that "he would never pay" the new DCA in the judges' requested salary range of $85,000 to $120,000. The judges, who had not had a court administrator since the purported termination of Quiroga's employment ten months earlier, then began their attempt to reinstate her. Cox explained that although the

18

revised job description for the new DCA position does have fewer job duties with fewer employees reporting to the director, the proposed salary range of $57,705 to $63,695, based on his experience, is "ridiculously low."

Commissioner Dennard testified that although "[t]he judges were the primary customer of the Department of Justice Administration," statutory amendments in 2005 and 2011 require that "Personal Bond, Building Security, Collections, and the Law Library" be supervised by the commissioners court.

After the hearing, the district court issued its temporary injunction order, finding, in pertinent part, as follows:

> *[Judge Henry] intentionally interfered with the independence of the Galveston County judiciary and the ability of the Galveston County judiciary to perform its judicial functions. . . .*
>
> . . . .
>
> Galveston County created an administrative department to serve the administrative needs of its courts and to assist county government in court related projects. Fourteen years ago, *the judges selected Bonnie Quiroga as the second director of Judicial Administration*, and such selection was approved by the Commissioner's Court. The testimony was that Ms. Quiroga had been employed by Galveston County for thirty years at the time [her employment] was terminated by [Henry] on July 24, 2014, so [she] was well known by the other employees and elected officials.
>
> The director of th[e] hybrid judicial-governmental administrative department, called Justice Administration, reported to the County Judge for the county government related duties and to the local Administrative Judge for the judicial administrative duties. *The principal duties of Justice Administration are judicial administration.* This department had a Director and other employees supervised by the Director. Offices for Judicial Administration are located in proximity to the Galveston County courts in the Galveston Justice Center. *The other employees'*

19

*duties are judicial in nature. The Director reported daily to the local Administrative Judge.* The Director also reported to the County Judge for the government related projects.

On July 24, 2014, [Henry] terminated the employment of the Director of Judicial Administration from both her governmental related responsibilities as well as her duties to the Galveston County judiciary. *[Henry] did not consult with the judiciary, nor did he advise the judiciary that he intended to terminate the Director of Judicial Administration's duties performed for the Galveston County Courts.* [Cox] disputes that grounds existed to terminate [Quiroga's employment].

. . . .

. . . . [Henry] placed his HR employee Peri Bluemer in charge of choosing the replacement [DCA]. In her testimony, *Ms. Bluemer demonstrated a lack of knowledge about courts, administrative duties of the court, and the nature of trust and confidence necessary in any person holding this sensitive court position.*

. . . *[Bluemer] used standards she designed to limit the consideration to only three applicants, eliminating applicants familiar with the Galveston County courts and attorneys in good standing with the State Bar*, while including a wholly unacceptable applicant who could not meet the standards of integrity necessary in such a sensitive position due to addiction to drugs and whose law license had been suspended by the State Bar.

. . . .

The Court finds this *qualification and interview process was designed to orchestrate the selection of the replacement administrator for the courts without . . . the advice or consent of the judiciary. . . .*

The Court finds that . . . *[Henry] abandoned his plan to force a hand-picked candidate as the judiciary's chief administrative officer, yet, used the ability to set the salary for the new position at a sufficiently low salary to continue to control the hiring process.*

. . . .

[Henry's] staff member Tyler Drummond was assigned to determine the salary for the new judicial administrator. Mr. Drummond graduated from a Vermont law school two years ago *and did not*

*demonstrate knowledge about courts, administrative duties of the courts, and court administrators.* He had prior experience working for the Vermont legislature.

. . . [Drummond] performed his salary search without including the salaries from other area counties and without input from the Galveston judiciary, or the judiciary in any of his comparative counties.

. . . .

. . . [And he] used standards he designed without sufficient expertise to establish an appropriate salary range for such a position.

. . . *[Drummond's] salary survey process was arbitrary and designed to orchestrate the salary of the replacement administrator for the courts at the lowest possible level, improperly undermining the independence of the judiciary.*

. . . .

[And] Henry's attempts to force his will as to employment of the judicial administrator included the attempt to intimidate the Galveston judges by including filing complaints with the Judicial Conduct Commission as part of the Agenda for June 9 and June 13 Commissioner's Court meetings.

The Court finds that [Cox] has demonstrated irreparable injury if a temporary injunction is not issued as shown by the conduct of *[Henry,] who attempted to stymie the effort of the judges to restore a judicial administrator by holding an emergency Commissioner's Court meeting on June 13, 2015, to create a new judicial administrator position at the salary level [Henry] knew was at a salary level the judiciary considered arbitrarily low to attract a suitable candidate.*

(Emphasis added.)

The district court concluded, in pertinent part, as follows:

- [Cox] has the probable right to recover relief in his suit that *[Henry] may not eliminate and attempt to control the replacement of the administrator for the courts in Galveston County and, then, manipulate employment terms and applicants to replace the administrator position to eliminate suitable applicants*;

21

- [Cox] and the courts of Galveston County are irreparably injured by the acts committed by [Henry], *and will be irreparably injured by further acts, to interfere with the administrative ability of the courts to perform their judicial functions*;

- the last peaceable status quo should be restored pending final trial in the case; and,

- if not enjoined, *[Henry] will continue to deny administrative support for the Galveston County courts, further interfering with the independence of the Galveston County judiciary and the ability of the Galveston County judiciary to perform its judicial functions*.

(Emphasis added.)

Based on its findings and conclusions, the district court ordered Judge Henry, and "his agents, servants, and representatives, and all those acting in concert with him":

[to] restore the employment of the Justice Administration Director [Quiroga] as an employee of Galveston County, under the same terms, judicial administrative organization, and salary scale of employment, as employed on July 23, 2014, to perform all administrative duties serving the courts of Galveston County as performed on July 23, 2014, which employment shall be supervised by the Galveston County local Administrative Judge. . . .

. . . [And] perform all necessary actions to carry out the reinstatement of [Quiroga] to her position as Galveston County Justice Administrator, including, but not limited to:

a.  issuing to [her] a key to her office in the Justice Center;

b.  directing IT to provide a computer and access to Galveston County Employee e-mail and other systems necessary for the performance of her job duties;

c.  providing [her] with a phone for her office;

d.      directing Human Resources to allow [her] to complete all paperwork for her to be reinstated, effective June 8, 2015, as a full time employee; and

e.      directing the Treasurer to reinstate [her], effective June 8, 2015, and pay . . . [her] her same salary as was paid prior to July 24, 2014.

The district court further enjoined Henry, "his agents, servants, and representatives, and all those acting in concert with him," from:

1.      Taking any action on the matters:

    (a)    relating to [the] application by county and district court judges for authority to appoint administrative employees for the courts other than in compliance with this temporary injunction;

    (b)    relating to justice administration other than in compliance with this temporary injunction;

    (c)    relating to Galveston County staff and agents regarding [Quiroga] other than in compliance with this temporary injunction;

    (d)    relating to Galveston County facilities used by Galveston County courts, court staff, and administrative staff other than in compliance with this temporary injunction; and

    (e)    relating to applications to appoint court administrative employees other than in compliance with this temporary injunction.

    . . . .

2.      Barring entrance to the Galveston County Justice Center by Justice Administration personnel, including [Quiroga].

3.      Preventing or impeding in any way the provision of, and the use of, county equipment and furnishings necessary to Justice Administration personnel, including [Quiroga], to perform their administrative duties.

4.      Instructing any Galveston County employees to disregard directives, instructions, or requests of Justice Administration,

23

including [Quiroga], to perform the duties of Justice Administration.

5. Appointing or employing any person other than [Quiroga] to perform the duties of [DJA] as directed by [Cox].

6. Reassigning or relocating any employee who was an employee of Justice Administration on July 23, 2014, including but not limited to [Quiroga], Monica Gracia, and Deputy Clint Purcell.

7. Taking any action to prevent or impede access by Justice Administration personnel, including [Quiroga], Monica Gracia, and Deputy Clint Purcell, to the offices occupied by Justice Administration on July 23, 2014.

The district court also ordered that Henry "his agents, servants, and representatives, and all those acting in concert with him,"

> restore Justice Administration under the same terms, judicial administrative organization, and salary scale of employment as existed on July 23, 2014, *so that Justice Administration may perform all administrative duties serving the courts of Galveston County as performed on July 23, 2014, which duties shall be supervised by the Galveston County Administrative Judge*.

(Emphasis added.) And it ordered that Henry "immediately provide written notice" of the court's order to each of the commissioners and all County "Department Heads" and employees under the supervision of the commissioner's court. The district court further noted that its temporary injunction did not include Quiroga "performing any duties relating to the law library, pretrial, or recovering costs." And it set the case for trial and set a bond.

**Standard of Review**

24

The sole issue in a temporary injunction proceeding is whether the applicant may preserve the status quo of the litigation's subject matter pending trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). The "status quo" is defined as "the last, actual, peaceable, noncontested status which preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004).

To obtain a temporary injunction, an applicant is not required to establish that he will prevail upon a final trial on the merits, but must plead and prove (1) a cause of action against the defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204; *Occidental Chem. Corp. v. ETC NGL Transp., LLC*, 425 S.W.3d 354, 363 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd). An irreparable injury is shown if there is no adequate remedy at law, i.e., the applicant cannot be adequately compensated in damages or damages cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204.

We review the district court's order granting the temporary injunction for a clear abuse of discretion. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993); *Occidental Chem. Corp.*, 425 S.W.3d at 363. Accordingly, we will not reverse the district court's order unless it is "so arbitrary as to exceed the bounds of reasonable discretion." *Butnaru*, 84 S.W.3d at 211; *Occidental Chem. Corp.*, 425 S.W.3d at 363. The scope of our review is limited to the validity of the temporary injunction

order; we do not review the merits of the underlying case. *Walling*, 863 S.W.2d at 58; *INEOS Grp. Ltd. v. Chevron Phillips Chem. Co*., 312 S.W.3d 843, 848 (Tex. App.–Houston [1st Dist.] 2009, no pet.).

We review the evidence in the light most favorable to the district court's ruling, drawing all legitimate inferences from the evidence, and deferring to the district court's resolution of conflicting evidence. *INEOS Grp. Ltd.*, 312 S.W.3d at 848. A court abuses its discretion if it misapplies the law to established facts. *Id.* An abuse of discretion does not occur as long as there is some evidence that reasonably supports the court's decision. *Butnaru*, 84 S.W.3d at 211.

## The Inherent Powers of the Texas Judiciary

At the outset, it must be noted that at the core of Judge Cox and the judges' complaints against Judge Henry, and, thus, the resolution of most of the issues presented by Henry in his appeal of the district court's temporary injunction, is the fundamental constitutional principle that the Texas Judiciary, as a separate, equal, and independent branch of government, has certain well-established inherent powers.

Texas courts "derive" their existence and "judicial power directly" from the Texas Constitution. *Mays v. Fifth Court of Appeals*, 755 S.W.2d 78, 80 (Tex. 1988) (Spears, J., concurring) (citing TEX. CONST. art. V, § 1); *see also Vondy v. Comm'r's Court of Uvalde Cty.*, 620 S.W.2d 104, 109–10 (Tex. 1981); *Eichelberger v.*

26

*Eichelberger*, 582 S.W.2d 395, 398–99 (Tex. 1979). Indeed, the "judicial power" of Texas is "vested" in our constitutionally established courts, which constitute and operate as a separate and equal branch of government. TEX. CONST. art. II, §1; *id.* art. V, § 1.

Moreover, the Texas Constitution, unlike the United States Constitution, contains a specific, strongly-worded provision, entitled "The Powers of Government," which mandates a strict separation of powers among the state's Legislative, Executive, and Judicial Departments. *See* TEX. CONST. art. II, § 1. And the drafters of the Texas Constitution thought the provision so important that they placed it in article II, ahead of the separate articles establishing the Legislative, Executive, and Judicial Departments of the state's government. *See id.* arts. III, IV, V. Only the Texas Bill of Rights, contained in article I of the Constitution, precedes the Separation of Powers Provision in prominence of place. *See id.* art. I, §§ 1–34. The provision expressly states:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another[;] and those which are Judicial to another; *and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others*, except in the instances herein expressly permitted.

*Id.* art. II, § 1 (emphasis added).

The judicial power of the state is divided among the various constitutionally established courts "by means of express grants of jurisdiction contained in the constitution and statutes." *Eichelberger*, 582 S.W.2d at 398. In addition to these express grants of judicial power, courts have "inherent" and "implied" powers "not *expressly* authorized or described by the constitution or statute." *Id*. (emphasis added). These powers are "woven into the fabric of the constitution by virtue of their origin in the common law" and "the mandate of . . . the separation of powers between three co-equal branches." *Id*. (citing TEX. CONST. art. II, § 1). As explained by the Texas Supreme Court:

> The inherent judicial power of a court is not derived from legislative grant or specific constitutional provision, *but from the very fact that the court has been created and charged by the constitution with certain duties and responsibilities*. The inherent powers of a court are those which it may call upon *to aid in the exercise of its jurisdiction, in the administration of justice*, *and in the preservation of its independence and integrity*. Inherent power of the courts has existed since the days of the Inns of Court in common law English jurisprudence. . . . It also springs from the doctrine of separation of powers between the three governmental branches. . . . *This power exists to enable our courts to effectively perform their judicial functions and to protect their dignity, independence and integrity*.

*Id*. at 388–89 (emphasis added) (citations omitted).

In *Vondy*, the Texas Supreme Court further explained that Texas courts have the inherent power to compel payment of sums of money if they are reasonable and necessary in order to carry out the court's mandated responsibilities. 620 S.W.2d at 109. This inherent power is "necessary for the judiciary to carry out its functions,

28

independently of the other branches of government," and "protect and preserve the judicial powers from impairment or destruction." *Id*. The court noted that courts across the nation have employed their inherent powers to hire staff and require that salaries be paid for secretaries, probation officers, and assistants. *Id*. at 110 (citations omitted). It also noted that in 1857, the Supreme Court of Pennsylvania required a county to compensate a constable for his services because of the benefit derived by the county for such services in the preservation of order and administration of justice. *Id*. (citing *Lancaster Cty. v. Brinthall*, 29 Pa. 38, 40 (1857)).

Accordingly, the Texas Supreme Court held that "the county commissioners of Uvalde County must compensate the county's constables" because "[t]he judicial system of this state cannot function properly if those officials who are responsible for carrying out certain duties in that process are not properly compensated" and "[i]t is the duty of the commissioners court to provide process servers as a necessary part of the proper administration of justice in this state, and to compensate them adequately." *Id*. (citations omitted). The court noted the fact that the commissioner's court "is also part of the judicial branch of this state." *Id*. (citing TEX. CONST. art V, § 1). But it concluded "this fact does not alter our powers to protect and preserve the judiciary by compelling payment for process servers." *Id*. In fact, when making fiscal and budgetary decisions, a commissioner's court

exercises its legislative function.  *See Comm'rs Court of Titus Cty. v. Agan*, 940

S.W.2d 77, 81 (Tex. 1997).  And, as emphasized by the court,

> The legislative branch of this state has the duty to provide the judiciary
> with the funds necessary for the judicial branch to function adequately.
> *If this were not so, a legislative body could destroy the judiciary by
> refusing to adequately fund the courts.  The judiciary must have the
> authority to prevent any interference with or impairment of the
> administration of justice in this state*.

*Vondy*, 620 S.W.2d at 110 (emphasis added).

Again emphasizing that Texas courts derive their judicial power directly from

the constitution and it "*expressly* mandates a separation of governmental powers,"

the Texas Supreme Court, in *Mays*, expressly stated that "even in the absence of a

statutory provision, a court has the inherent power to compel the expenditure of those

public funds which are reasonably necessary for the court to efficiently fulfill its

constitutional function."  755 S.W.2d at 80 (citing V*ondy*, 620 S.W.2d at 109–10;

*Eichelberger*, 582 S.W.2d at 398–99).  Thus, "[o]n this basis alone, a district judge

may set a reasonable salary" for court staff.  *Mays*, 755 S.W.2d at 80.

Writing for the majority of the court in *Mays*,[13] Justice Franklin Spears further

elaborated:

> Like the power to punish for contempt, *a court's inherent power to
> compel funding flows from the law of self-preservation*.  No legislative

---

[13]  We note that although Justice Spears' opinion in *Mays* is labeled a concurring
opinion, four other justices joined the opinion and, in it, the majority of the court
simply elaborated on its previous discussions of the inherent powers of Texas courts.
*See* 755 S.W.2d at 80.

30

authority, state or local, can so tighten the purse strings of the judiciary's budget that it fails to provide the funds reasonably necessary for the court's efficient and effective operation. *To adhere to any contrary view would effectively concede to the legislature the power to render inoperative the judicial branch of government.* It could force the judiciary into the role of a subordinate and supplicant governmental service—in effect, a mere agency. *The judiciary is not an agency, but is a constitutionally established separate, equal and independent branch of government.*

*Id.* (citing *LeCroy v. Hanlon*, 713 S.W.2d 335, 338 (Tex. 1986)) (emphasis added).

Thus, the "inherent power of the courts is necessary not only to preserve the judicial branch of government, but also to preserve for the people their security and freedom." *Id.* Indeed,

The judicial power provides a check on the abuse of authority by other governmental branches. *If the courts are to provide that check, they cannot be subservient to the other branches of government but must ferociously shield their ability to judge independently and fairly.* This is the essence of our very existence; we owe the people of Texas no less than our unflinching insistence on a true tripartite government. It is the responsibility of this court to preserve this constitutional framework.

*The inherent power of the courts to compel funding thus arises out of principles and doctrines that are so thoroughly embedded as to form the very foundation of our governmental structure.* The judiciary may often be denominated as the "third" branch of government, but that does not mean it is third in importance; it is in reality one of three equal branches. *As such, the judiciary is an integral part of our government and cannot be impeded in its function by legislative intransigence in funding.*

*Id.* at 80–81(emphasis added).

Again, the court in *Mays* noted that courts across the nation have used their inherent powers to compel funding for a wide variety of essentials, including

31

janitorial services, chairs and carpeting, tape recording equipment, telephone services, and air conditioning equipment. *Id*. at 80–82 (citations omitted). And "[n]umerous courts have held that *the hiring of court personnel and the designation of staff salaries* are matters over which courts may properly exercise their inherent powers." *Id*. at 82 (emphasis added) (citations omitted).

With this in mind, the court noted that the Supreme Court of Indiana had expressly recognized that the "power of the courts to employ necessary personnel and fix their salaries" is "grounded on the most fundamental of constitutional principles." *Id*. (citing *Noble Cty. Council v. State ex. Rel. Fifer*, 125 N.E.2d 709, 714 (Ind. 1955)). And it quoted the Indiana court's reasoning:

> These [constitutional] mandates necessarily carry with them the right to quarters appropriate to the office and personnel adequate to perform the functions thereof. *The right to appoint a necessary staff of personnel necessarily carries with it the right to have such appointees paid a salary commensurate with their responsibilities. The right cannot be made amenable to and/or denied by a county council or the legislature itself.* Our courts are the bulwark, the final authority which guarantees to every individual his right to breathe free, to prosper and be secure within the framework of a constitutional government. *The arm which holds the scales of justice cannot be shackled or made impotent by either restraint, circumvention or denial by another branch of that government.*

*Id*. (emphasis added) (quoting *Noble Cty. Council*, 125 N.E.2d at 714). The court in *Mays* also noted that many courts have "expressly concluded that, as a matter of constitutional law, the judiciary must directly control court personnel." *Id*. (citations omitted).

32

Moreover, the court further explained that "courts may even compel payment of those expenses which are reasonably necessary for the court to exercise its inherent powers. Thus, if it becomes necessary for a court to retain counsel in order to litigate an exercise of inherent powers, then payment of attorney fees may also be compelled." *Id*. (citation omitted).

With these important constitutional principles in mind, we turn to the issues presented in this appeal.[14]

## Mootness

In his first issue, Judge Henry argues that the district court's temporary injunction has become moot on appeal because the Texas Legislature recently

---

[14] Our dissenting colleague asserts that the district court, in its temporary injunction order did not expressly "rely on the judiciary's inherent authority." And we note that the district court did not make reference to the Separation of Powers Provision of the Texas Constitution. However, the district court, in issuing its temporary injunction, specifically found that Judge Henry had "intentionally interfered with the independence of the Galveston County judiciary" and its "ability" to perform its judicial functions, and he would "continue" to do so. As noted above, Texas courts have the inherent power to "protect and preserve" their "judicial powers from impairment or destruction," and this power is "necessary for the judiciary to carry out its functions, independently of the other branches of government." *Vondy*, 620 S.W.2d at 109. Although the district court did not expressly refer to its inherent power in issuing the temporary injunction order, this power necessarily formed the basis of the order, especially given the fact that Judge Cox invoked it and the Separation of Powers Provision in his request for the temporary injunction.

We note that Judge Henry, in his briefing to this Court, does not present an issue in which he challenges the inherent powers of the Texas Judiciary to protect and preserve the proper administration of the judicial system, nor does he contend that the district, in entering the temporary injunction, acted outside of the scope of its inherent power.

33

amended the Texas Government Code to, "*[f]or the first time*," provide "specific authority for the creation of a county-funded court administrative system for the district courts collectively in counties like Galveston County" and the amendment became effective on September 1, 2015. (Emphasis added.) *See* Act of May 27, 2015, 84th Leg., R.S., S.B. 1913, ch. 966, §1–2 (codified as an amendment to TEX. GOV'T CODE ANN. § 75.401) (referred to hereafter as TEX. GOV'T CODE ANN. § 75.401 (Vernon Supp. 2015)). He further argues that because the "new amendments to section 75.401" "*now give authority* to the judges in Galveston County" "to appoint Ms. Quiroga to the *new* Court Administrator position," "where she would be supervised by those judges and serve at their pleasure," and "*now* clearly gives" the commissioners court "the authority to set the salary for that position," the temporary injunction "does not have any practical effect on an existing controversy." (Emphasis added.)

"[C]ourts have an obligation to take into account intervening events that may render a lawsuit moot." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 166–67 (Tex. 2012). Appellate courts lack jurisdiction to decide moot controversies and render advisory opinions. *See Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999). A justiciable controversy between the parties must exist at every stage of the legal proceedings, including the appeal, or the case is moot. *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001). "If a controversy ceases to exist—the issues

34

presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome—the case becomes moot." *Id.* The same is true if an appellate court's judgment cannot have any practical legal effect upon a then existing controversy. *Zipp v. Wuemling*, 218 S.W.3d 71, 73 (Tex. 2007). A case may become moot by reason of new legislation or acts that supersede existing legislation. *In re Gruebel*, 153 S.W.3d 686, 689 (Tex. App.—Tyler 2005, orig. proceeding). However, a case is not moot if some issue is still in controversy. *Id.*

Section 75.401, as amended, provides:

(a)  In a county that has more than one district court or statutory county court, those courts may establish and maintain, on approval of the commissioners court, a court administrator system.

(b)  The judges of the district courts or the statutory county courts may by local rule designate local court divisions and the duties of the court administrator for each division, if applicable. The court administrator shall cooperate with regional, presiding, and local administrative judges and state agencies having duties relating to the operation of the courts to promote uniform and efficient administration of justice.

(c)  *The court administrator is appointed by the judges of the district courts or the statutory county courts served by the court administrator. The court administrator serves at the pleasure of those judges.*

(d)  *A court administrator is entitled to reasonable compensation, as determined by the judges served and in the salary range for the position, as set by the commissioners court.*

(e)  The judges of the courts served by the court administrator, with the approval of the commissioners court, shall appoint appropriate staff and support personnel according to the needs of the local jurisdiction.

(f)    On order and directive of the judges, the commissioners court shall fund the court administrator system from fines collected by the courts served by the court administrator. If the fines collected are insufficient to provide the total funding for the program, the county shall provide the additional funds needed.

TEX. GOV'T CODE ANN. § 75.401 (emphasis added).

The legislature explained that it amended section 75.401 because "interested parties" had "contend[ed] that there [was] a need to *clarify the statutory authority* of judges to hire a county court administrator in a county served by multiple district courts and statutory county courts." House Comm. on Judiciary & Civ. Jurisprudence, Bill Analysis, Tex. S.B. 1913, 84th Leg., R.S. (2015) (emphasis added). The previous version of section 75.401 discussed the authority of courts in counties with "more than one" "county criminal court or more than one county court at law" "to establish a court administrator system." Act of May 17, 1985, 69th Leg., R.S., ch. 480, § 1, 1985 Tex. Gen. Laws 1720, 2015 (amended 2009). The amended version discusses the establishment and maintenance of a court administrator system by courts in counties that have "more than one district court or statutory county court." TEX. GOV'T CODE ANN. § 75.401(a). The current version of section 75.401, as did the previous version, recognizes that the court administrator "is appointed by the judges" of the courts served by the administrator and "serves at" their "pleasure." *Compare* TEX. GOV'T CODE ANN. § 75.401(b), (c), *with* Act of May 17, 1985, 69th Leg., R.S., ch. 480, § 1, 1985 Tex. Gen. Laws 1720, 2015 (amended 2009).

Moreover, the current version of section 75.401, as did the previous version, recognizes that a court administrator "is entitled to reasonable compensation." *Compare* TEX. GOV'T CODE ANN. § 75.401(d), *with* Act of May 17, 1985, 69th Leg., R.S., ch. 480, § 1, 1985 Tex. Gen. Laws 1720, 2015 (amended 2009).

Judge Cox argues that the district court's temporary injunction is not moot because, regardless of the recent changes made to section 75.401, this case "directly involves the constitutional prerogative of the trial judges, who have a well-established right to select judicial personnel and to have them reasonably compensated by the commissioners." *See Mays*, 755 S.W.2d at 80–82; *Vondy*, 620 S.W.2d at 109–10. He asserts that these rights are "recognized" in section 75.401 and Judge Henry and the commissioners court, relying on the fact that the legislature has recently amended the statute, are merely attempting "to rig" the compensation of the court administrator "so as to" illegally "control [the] selection process." Cox further asserts that Henry illegally "fire[d] Ms. Quiroga," "arrogate[d] to himself and his staff the selection of a successor," and "compounded the harm by attempting to cut the judges out of the selection process," "flimflam[ing] the system by a stacked salary review."

Judge Cox notes that at the time Judge Henry purportedly terminated Quiroga's employment in July 2014, her compensation was set and approved by the commissioners court at $113,000. Henry then, based on Drummond's unfounded

"research," recommended, and the commissioners court approved, a salary range of $57,705 to $63,695 for the "new" court administrator position. And Cox asserts that the judges cannot hire a qualified court administrator at a salary within that range, nor can they set any level of compensation within that range that would be "reasonable." *See* TEX. GOV'T CODE ANN. § 75.401(d).

We first note that Judge Henry's argument that the district court's temporary injunction is moot is based entirely on the false premise that the "new amendments to section 75.401," "[f]or the first time," gave the Galveston County Judiciary the authority "to appoint Ms. Quiroga to the new position of Court Administrator." Henry, in making this assertion, ignores the fact, as found by the district court, that the judges had "[f]ourteen years ago" "selected" Quiroga as the second DJA. And he ignores the well-established constitutional principle that Texas judges have the "inherent power to act to protect and preserve the proper administration of the judicial system." *Vondy*, 620 S.W.2d at 109. As noted above, this includes the inherent power to hire staff and "compel the payment of sums of money if they are reasonable and necessary in order to carry out the court's responsibilities." *Id.* at 109–10. The legislature, in amending section 75.401, did not, as Henry asserts, "[f]or the first time" *give* the Galveston County Judiciary the authority to appoint Quiroga to her position. It merely, in its own words, at the request of "interested parties," "*clarified*" the judges' "statutory authority to do so." House Comm. on

Judiciary & Civ. Jurisprudence, Bill Analysis, Tex. S.B. 1913, 84th Leg., R.S. (2015) (emphasis added).

More important, the fact that the legislature amended section 75.401 does not in any way "moot" the district court's findings that

- [Judge Cox] has the probable right to recover relief in his suit that *[Judge Henry] may not eliminate and attempt to control the replacement of the administrator for the courts* in Galveston County *and, then, manipulate employment terms and applicants to replace the administrator position to eliminate suitable applicants*;

- [Cox] and the courts of Galveston County are irreparably injured *by the acts committed by [Henry], and will be irreparably injured by further acts, to interfere with the administrative ability of the courts to perform their judicial functions*;

- the last peaceable status quo should be restored pending final trial in the case; and,

- if not enjoined, *[Henry] will continue to deny administrative support for the Galveston County courts, further interfering with the independence of the Galveston County judiciary and the ability of the Galveston County judiciary to perform its judicial functions*.

(Emphasis added.)

Specifically, in regard to Quiroga's position and salary as Galveston County DJA, the district court found:

- *[Judge Henry] intentionally interfered with the independence of the Galveston County judiciary and the ability of the Galveston County judiciary to perform its judicial functions. . . .*

- *Fourteen years ago, the judges selected Bonnie Quiroga as the second director of Judicial Administration, and such selection was approved by the Commissioner's Court. . . .*

39

- The director of th[e] hybrid judicial-governmental administrative department, called Justice Administration, reported to the County Judge for the county government related duties *and to the local Administrative Judge for the judicial administrative duties. The principal duties of Justice Administration are judicial administration. . . . The Director reported daily to the local Administrative Judge.* The Director also reported to the County Judge for the government related projects.

- On July 24, 2014, [Henry] terminated the employment of the Director of Judicial Administration from both her governmental related responsibilities as well as her duties to the Galveston County judiciary. *[Henry] did not consult with the judiciary, nor did he advise the judiciary that he intended to terminate the Director of Judicial Administration's duties performed for the Galveston County Courts. . . .*

- *[Henry's] qualification and interview process was designed to orchestrate the selection of the replacement administrator for the courts without . . . the advice or consent of the judiciary. . . .*

- *[Henry] abandoned his plan to force a hand-picked candidate as the judiciary's chief administrative officer, yet, used the ability to set the salary for the new position at a sufficiently low salary to continue to control the hiring process.*

- [Henry's] staff member Tyler Drummond was assigned to determine the salary for the new judicial administrator. . . .

- [Drummond's] salary survey process was arbitrary and designed to orchestrate the salary of the replacement administrator for the courts at the lowest possible level, improperly undermining the independence of the judiciary.

- *[And Henry] attempted to stymie the effort of the judges to restore a judicial administrator by holding an emergency Commissioner's Court meeting on June 13, 2015, to create a new judicial administrator position at the salary level [Henry] knew was at a salary level the judiciary considered arbitrarily low to attract a suitable candidate.*

(Emphasis added.)

The evidence presented at the injunction hearing supports the district court's findings, which Henry does not challenge. Commissioner Dennard admitted that "[t]he judges were the primary customer of the Department of Justice Administration." Regardless, Henry, himself, testified that on July 24, 2014, he terminated Quiroga's employment solely on his own initiative as county judge. Although he had discussed terminating Quiroga's employment with one of the county commissioners, he did not raise the matter at a commissioners court meeting, nor did he confer with the judges before terminating her employment. Henry also conceded that neither he nor the commissioners court had given Quiroga any prior job-performance reviews, nor had there been any documented dissatisfaction with her job performance. He simply opined that it was "in the public's best interest" to amend the 2015 fiscal-year budget and restructure and reorganize certain County departments. Henry noted that after he had terminated Quiroga's employment, "it was important to have that role filled," and he then assigned, again without consulting Judge Cox and the judges, his own staff to "spearhead[]" the effort and set a salary range for the new position. And although the commissioners, in the June 9, 2015 order, set the salary range for the new DCA position at $57,705 to $63,695, Drummond admitted that, in determining salary ranges for County positions, he does not apply any methodology that is generally accepted by counties in setting such salary ranges.

41

As noted above, Judge Cox testified at length about Quiroga's many duties to the Galveston County Judiciary. And the district court admitted into evidence Quiroga's 2005 "Job Description Certification," the "Position Summary" of which states that she "manages, coordinates, directs, and plans the operations and activities of all courts" and lists her numerous "Essential Functions." Cox explained that he was not warned prior to the termination of Quiroga's employment, and he chronicled the subsequent events, including Judge Henry's lock-out of Quiroga from her office, removal of her personal computer and telephone, "filing [of] criminal trespass warnings or notices" against her, and attempts to conduct interviews for her replacement.

Cox further testified that, based on his experience, Drummond's proposed salary range is "not an adequate salary for this position." And the judges, in their May 12, 2015 application to the commissioners court to approve the hiring of a DCA at an annual salary of $85,000 to $120,000, included a job description and a "Salary Survey." The Salary Survey includes the salary ranges, which vary from a low of $45,894 to a high of $149,488, for court administrators in Bexar, Collin, Dallas, Denton, Tarrant, and Williamson counties and indicates the number of courts to which each administrator reports. Cox also testified that Lubbock and Montgomery counties reported court administrator annual salaries of $110,000 and $100,000, respectively.

Judge Cox further explained that despite this evidence, Judge Henry, at the end of one of the May 2015 "workshops," stated that "he would never pay" the director in the judges' requested salary range of $85,000 to $120,000. And Cox noted that although the revised job description for the position of court administrator eliminates duties in regard to the law library, building facilities, pre-trial release, and collections and has fewer reporting employees, Henry's proposed salary range is, based on Cox's experience, "ridiculously low." Moreover, the judges have not had a court administrator since Henry purportedly terminated Quiroga's employment on July 24, 2014.

Judge Henry did testify that he and the commissioners court reduced the salary range for the "new" DCA because "all" of the commissioners court "functions" had been removed from the duties of the position. And he asserted that the "new" DCA position has "approximately 25 percent of the responsibility that the old DJA position had," based on the number of people reporting to the director. However, he conceded that he, in proposing the new salary range, did not consider the number of elected officials to whom the director reports, nor did he consider the importance of one duty over another. Although Henry asserts that Judge Cox has not attempted to hire a court administrator in the proposed salary range, this assertion wrongly presumes that Henry had the legal authority to terminate Quiroga's employment, in regard to her duties to Cox and the judges, in the first place. This issue is yet to be

decided by the district court. Moreover, the evidence reveals that Henry himself was unable to fill the position with a qualified candidate. Bluemer testified that after she had publicly posted the position, she selected the "10 to 15" candidates who "fit the role," conducted telephone interviews, narrowed the field to "four," and set up interviews with Henry and Dennard. Ultimately, Henry and Dennard chose three "final" candidates, none of whom, according to Bluemer, had any experience in court administration.

We defer to the district court's resolution of conflicting evidence. *See INEOS Grp. Ltd.*, 312 S.W.3d at 848. The district court was free to believe Judge Cox, and credit evidence in his favor, and to disbelieve Judge Henry, and discredit evidence in his favor. Based on the evidence, the district court could have reasonably concluded, as it did, that Henry, by purporting to unilaterally terminate Quiroga's employment, had intentionally denied administrative support for Cox and the judges and interfered with the independence of the Galveston County Judiciary and its ability to perform its judicial functions. And, based on the evidence, the district court could have reasonably concluded, as it did, that Henry would continue to do so. Thus, the district court's issuance of the temporary injunction was in accord with the valid exercise of its inherent power to act to protect and preserve the proper

administration of justice.[15]  And the recent amendments to section 75.401, which became effective on September 1, 2015, do not vitiate the district court's findings and conclusions.

Although section 75.401 recognizes that the commissioners court has the discretion to set a salary range for Quiroga's position, this power cannot be used arbitrarily or unreasonably or in a manner that interferes with Judge Cox and the judges' inherent powers and abilities to perform their judicial functions effectively. *See Mays*, 755 S.W.2d at 83; *Vondy*, 620 S.W.2d at 109–10; *Eichelberger*, 582 S.W.2d at 398–99.  The ultimate resolution of the salary dispute is yet to be decided by the district court and is outside the scope of our review, which is limited to the validity of the temporary injunction.[16]  *See INEOS Grp. Ltd.*, 312 S.W.3d at 848.

We conclude that there remains a justiciable controversy regarding Judge Henry's purported termination of Quiroga's employment and his attempts, as found by the district court, to influence the judges' decision to keep Quiroga as their administrator and interfere with the independence and ability of the judges to

---

[15]  Of course, Judge Cox and the judges also have the same inherent power.  *See Mays*, 755 S.W.2d at 80–83; *Vondy*, 620 S.W.2d at 109.

[16]  Our dissenting colleague asserts that the district court "erred in setting a specific salary; instead, it should have instructed the commissioners court to set a new—and reasonable—salary for Quiroga's new position."  However, the court has not set a permanent salary for Quiroga, nor has it permanently reinstated her to the DJA position.  It merely entered the temporary injunction to preserve the status quo pending trial on these ultimate issues.

45

perform their duties by setting an "arbitrarily low" salary range for her position. *See*

*Vondy*, 620 S.W.2d at 109–10; *Eichelberger*, 582 S.W.2d at 399; *Griffin v. Birkman*,

266 S.W.3d 189, 195 (Tex. App.—Austin 2008, pet. denied); *Hooten v. Enriquez*,

863 S.W.2d 522, 528–29 (Tex. App.—El Paso 1993, no pet.). Accordingly, we hold

that the district court's temporary injunction order is not moot.

We overrule Judge Henry's first issue.

## Jurisdiction

In his second issue, Judge Henry argues that the district court lacked subject

matter jurisdiction to issue the temporary injunction because Judge Cox "lack[s]

standing to seek an injunction reinstating [Quiroga] to her old job at her old salary";

"[l]egislative immunity bars this suit . . . as a matter of law"; and "the other county

commissioners are indispensable parties and their absence is jurisdictional."

Whether a district court has subject-matter jurisdiction is a question of law

that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d

217, 228 (Tex. 2004).

### *Standing*

Judge Henry first argues that Judge Cox "lacked standing to seek an

injunction" because "[t]he injury alleged in this case was suffered only by Bonita

Quiroga—being terminated from her job" as DJA. He asserts that Cox "did not

demonstrate that he had standing 'in his official capacity as Judge of the 56th District

46

Court of Galveston County' to seek an injunction reinstating Ms. Quiroga to her old job."

In response, Judge Cox asserts that "Quiroga was not the only party injured"; rather, "[a]nother distinct casualty was the constitutionally grounded ability of judges to select competent personnel and to have them adequately compensated."

Standing is implicit in the concept of subject-matter jurisdiction, and subject-matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Thus, standing is never presumed, cannot be waived, and may be raised for the first time on appeal. *Id*. at 443–44. The test for standing requires that there be a real controversy between the parties that will actually be determined by the judicial declaration sought. *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996). Without a breach of a legal right belonging to the plaintiff, no cause of action can accrue to his benefit. *Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex. 1976).

A plaintiff has standing when he is personally aggrieved, regardless of whether he is acting with legal authority. *Nootsie, Ltd.*, 925 S.W.2d at 661. He has standing if: (1) he has sustained, or is immediately in danger of sustaining, some direct injury as a result of the wrongful act of which he complains; (2) he has a direct relationship between the alleged injury and claim sought to be adjudicated; (3) he has an individual stake in the controversy; (4) the challenged action has caused him

some injury in fact; or (5) he is an appropriate party to assert the public's interest in the matter as well as his own interest. *Lake Medina Conservation Soc., Inc./Bexar-Medina Atascosa Counties WCID No. 1 v. Tex. Nat. Res. Conservation Comm'n*, 980 S.W.2d 511, 515–16 (Tex. App.—Austin 1998, pet. denied); *Billy B., Inc. v. Bd. of Trustees*, 717 S.W.2d 156, 158 (Tex. App.—Houston [1st Dist.] 1986, no writ).

A plaintiff has the burden of alleging facts that affirmatively demonstrate a court's jurisdiction to hear a cause. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. And we construe the allegations in the pleadings in favor of the pleader. *Id.* A court deciding an issue of standing is not required to look solely to the pleadings, but may consider evidence, and must do so when necessary, to resolve the jurisdictional issues raised. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000); *In re Shifflet*, 462 S.W.3d 528, 537 (Tex. App.—Houston [1st Dist.] 2015, orig. proceeding). A challenge to standing cannot be used to require the party to prove his entire case but should be limited to facts that might be characterized as primarily jurisdictional. *See Blue*, 34 S.W.3d at 554; *In re Shifflet*, 462 S.W.3d at 537.

Judge Henry's argument that Judge Cox lacks standing to seek injunctive relief from the district court is based on the false premise that "[t]he injury alleged in this case was suffered *only* by Bonita Quiroga—being terminated from her job" as DJA. (Emphasis added.) In fact, Cox alleges that he suffers "imminent," "ongoing," and "irreparable" harm because Henry has interfered with the ability of

Cox's court to properly perform its judicial functions. And Cox seeks "enforcement of constitutional rights and powers under the inherent power of the courts to demand and receive adequate funding, personnel and facilities."

As noted above, the district court expressly found that Judge Henry "intentionally interfered with the independence of the Galveston County [J]udiciary" and its ability to "perform its judicial functions." It further found that Henry "will continue to deny administrative support for the Galveston County courts, further interfering with the independence of the Galveston County [J]udiciary" and its ability to "perform its judicial functions."

In support of that finding, Judge Cox testified that Judge Henry, without notice to Cox and the judges, had dismantled the Department of Justice Administration, unilaterally terminated the employment of Quiroga, and begun reassigning court staff. And since September 24, 2014, Cox and his colleagues have been without a DJA, and, thus, without an executive to perform numerous "essential functions," including assisting with and managing caseloads and implementing efficient docket control; training court staff; arranging for personal bonds (pretrial); arranging for interpreters; determining the eligibility for and appointing indigent defense counsel; and providing for the comfort, convenience, and security of jurors. Cox further testified that the new salary range proposed by Drummond and Henry is so unreasonably low that the judges cannot fill it with a qualified candidate.

49

Accordingly, we hold that Judge Cox has sufficiently alleged facts and presented evidence affirmatively demonstrating his standing to bring the instant suit against Judge Henry.[17] *See Tex. Ass'n of Bus.*, 852 S.W.2d at 443–44; *see generally Cty. Comm'rs Court of Dall. Cty. v. Williams*, 638 S.W.2d 218, 221 (Tex. App.—Eastland 1982, writ ref'd n.r.e.) (practicing attorney, "due to the special interest attorneys have in their profession," had standing to enjoin commissioners court from enforcing order allocating courtroom and library space).

### Legislative Immunity

Judge Henry next argues that "legislative immunity bars Judge Cox's suit against" him "as a matter of law" because Cox's claims involve Henry's

---

[17]   We further note, as discussed more fully above, that the district court itself possesses inherent powers upon which it may call "to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity." *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398 (Tex. 1979). In *Vondy*, the Texas Supreme Court further explained that Texas courts have the inherent power to compel payment of sums of money if they are reasonable and necessary in order to carry out the court's mandated responsibilities. 620 S.W.2d at 109. This inherent power is "necessary for the judiciary to carry out its functions, independently of the other branches of government," and "protect and preserve the judicial powers from impairment or destruction." *Id.* "On this basis alone," the district court has jurisdiction to decide the instant case and provide injunctive relief, including the reinstatement of Quiroga's employment and the setting of a "reasonable salary" for her, pending the outcome of the trial on the merits. *See Mays*, 755 S.W.2d at 80.

Moreover, although Judge Cox did not rely upon his own inherent powers as the judge of the 56th District Court to order Judge Henry to show cause why he should not be held in contempt of Cox's September 24, 2014 and June 8, 2015 orders, Cox did invoke, as discussed below, the district court's jurisdiction and general supervisory control over the commissioners court by filing the instant lawsuit. *See* TEX. CONST. art. V, § 8; TEX. GOV'T CODE ANN. § 24.020 (Vernon 2004).

"performance," as a member of the commissioners court, of "legislative functions and duties" in "passing and effectuating [commissioners court] orders" terminating Quiroga's employment as DJA, creating the "new administrator position," and setting the salary range for the new position."

Legislative immunity protects individuals from "personal liability" for actions performed in their legislative capacity. *In re Perry*, 60 S.W.3d 857, 859 (Tex. 2001). "'When officials are threatened with personal liability for acts taken pursuant to their official duties, they may well be induced to act with an excess of caution or otherwise to skew their decisions in ways that result in less than full fidelity to the objective and independent criteria that ought to guide their conduct.'" *Id.* (quoting *Forrester v. White*, 484 U.S. 219, 223, 108 S. Ct. 538, 542 (1988)); *see also Hays Cty. v. Hays Cty. Water Planning P'ship*, 106 S.W.3d 349, 359 (Tex. App.—Austin 2003, no pet.).

Here, Judge Cox does not sue Judge Henry in his personal capacity; rather, Cox sues Henry in his official capacity as county judge. Moreover, although Henry filed, in the district court, a plea to the jurisdiction, he did not raise an immunity defense, but instead advanced other grounds. Immunity from liability does not affect a court's jurisdiction to hear a case. *See Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Like other affirmative defenses to liability, it must be pleaded or it is waived. *Id.*; *see* TEX. R. CIV. P. 94.

51

Accordingly, we hold that Judge Cox's suit is not barred by legislative immunity.

*Indispensable Parties*

Judge Henry next argues that the district court lacked jurisdiction to issue a temporary injunction against him because Judge Cox did not join the county commissioners, or the commissioners court as a whole, as parties to the suit. Henry asserts that the commissioners are "indispensable parties and their absence is a fatal jurisdictional defect."

Texas Rule of Civil Procedure 39 provides, in pertinent part, as follows:

(a) **Persons to be Joined if Feasible.** A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. . . .

(b) **Determination by Court Whenever Joinder Not Feasible.** If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective

52

provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder.

TEX. R. CIV. P. 39(a)–(b). "Although [rule 39] provides for joinder in mandatory terms, 'there is no arbitrary standard or precise formula for determining whether a particular person falls within its provision.'" *Longoria v. Exxon Mobil Corp.*, 255 S.W.3d 174, 180 (Tex. App.—San Antonio 2008, pet. denied) ( quoting *Cooper v. Tex. Gulf Indus., Inc.*, 513 S.W.3d 200, 204 (Tex. 1974)); *see also Kodiak Res., Inc. v. Smith*, 361 S.W.3d 246, 251 (Tex. App.—Beaumont 2012, no pet.). If a district court determines that an absent person falls within the provisions of the rule, it has a duty to effect that person's joinder. *Longoria*, 255 S.W.3d at 184; *see* TEX. R. CIV. P. 39(a). If a person required to be joined under subsection (a) cannot be joined, the district court must decide "whether in equity and in good conscience the action should proceed among the parties before it, or should be dismissed" by considering the factors listed in subsection (b). *Id.*; *see* TEX. R. CIV. P. 39(b); *State Office of Risk Mgmt. v. Herrera*, 288 S.W.3d 543, 549 (Tex. App.—Amarillo 2009, no pet.).

"At one time, it was at least theoretically possible that the joinder of a person could be so essential to a case that proceeding in the person's absence would constitute fundamental error, which could be raised for the first time on appeal." *Onwudiegwu v. Dominguez*, No. 14-14-00249-CV, 2015 WL 4366213, at *4 (Tex.

53

App.—Houston [14th Dist.] July 16, 2015, no pet.) (mem. op.) (citing *Vondy*, 620 S.W.2d at 106). However, the Texas Supreme Court has held that since rule 39 was amended, a party complaining of a nonjoined person's absence waives that complaint by failing to raise it in the district court, explaining that

> [h]enceforth, it will be rare indeed when an appellate court properly determines that the trial court lacked jurisdiction to adjudicate a dispute when the nonjoining person's absence is raised for the first time on appeal by one of the parties in the trial court, at least insofar as the judgment affects parties who participated in the trial, directly or indirectly, or who purposely bypassed the proceedings. The doctrine of fundamental error should no longer protect persons from the binding force of judgments when they have had an opportunity to raise the absence of the nonjoined person and waived it.

*Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 162–63 (Tex. 2004) (issue of suit dismissal because zoning board not joined as defendant constituted "prudential rather than jurisdictional question"); *see also Trust Fund for Haynes v. Walden on Lake Conroe Cmty. Imp. Ass'n, Inc.*, No. 09-04-374 CV, 2006 WL 137434, at *3 (Tex. App.—Beaumont Jan. 19, 2006, no pet.) (mem. op.) (issue of whether party indispensable waived by failure to raise it in trial court); *Wilchester W. Concerned Homeowners LDEF, Inc. v. Wilchester W. Fund, Inc.*, 177 S.W.3d 552, 558–60 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (non-joinder not jurisdictional and waived because not raised in trial court).

Courts have held that there are "rare cases in which failure to name an indispensable party will deprive a court of jurisdiction," i.e., "where a party

responsible for enforcing a statute is not named in an action to declare that statute unconstitutional." *Motor Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass'n, Inc.*, 37 S.W.3d 538, 540–41 (Tex. App.—El Paso 2001, pet. denied) (trial court lacked jurisdiction because party enforcing blue law not named in action to declare statute unconstitutional); *see also Herrera*, 288 S.W.3d at 549 (affirming dismissal, where plaintiff failed to join one of two insurance carriers allegedly liable for payment of death claim and issue raised in petition could not be joined); *Gilmer Indep. Sch. Dist. v. Dorfman*, 156 S.W.3d 586, 588–89 (Tex. App.—Tyler 2003, no pet.) (holding commissioner of education indispensable and dismissing property owner's suit to declare unconstitutional two chapters of Education Code).

Again, we note that Judge Henry did not raise his joinder issue in his plea to the jurisdiction. Judge Cox's pleadings establish that he seeks to temporarily enjoin only "the acts of Mark A. Henry" and those whom he directs or controls, or those "acting in concert" with him. "[C]ourts have held that a party with rights to be preserved pending final trial need not join all necessary parties before obtaining interim orders, such as a temporary injunction." *Hyde v. Ray*, No. 2-03-339-CV, 2004 WL 1277869, at *2 (Tex. App.—Fort Worth June 10, 2004, no pet.) (mem. op.); *see also Speedman Oil Co. v. Duval Cty. Ranch Co.*, 504 S.W.2d 923, 926 (Tex. Civ. App.—San Antonio 1973, writ ref'd n.r.e.) ("Persons against whom no complaint of wrongdoing is lodged and against whom no injunctive relief is sought

are not indispensable parties (to a proceeding for temporary injunction). . . . [I]t may well be that other parties will have to be brought into the suit. . . . This, however is not fatal to the temporary equitable relief granted." (internal citations omitted)). "Before a case is called for trial, additional parties necessary or proper parties to the suit, may be brought in, either by the plaintiff or the defendant, upon such terms as the court may prescribe." TEX. R. CIV. P. 37. "Thus, on appeal of a preliminary matter, such as the issuance of [the] temporary injunction, the question of necessary and indispensable parties [to the suit] is not reached." *Hyde*, 2004 WL 1277869, at *2–3. Accordingly, we hold that neither the Galveston County commissioners, nor the commissioners court as a whole, are indispensable parties to the district court's temporary injunction.

We overrule Judge Henry's second issue.

### Supervisory Jurisdiction

In his third issue, Judge Henry argues that the temporary injunction is "void" because the district court "exceeded its supervisory jurisdiction" over the commissioners court. *See* TEX. CONST. art. V, § 8. He further argues that the "district court's exercise of its supervisory jurisdiction is invalid" because (1) the commissioners court "did not act beyond its jurisdiction or abuse its discretion by failing to perform a clear statutory duty when it (i) terminated [Quiroga's] employment, (ii) created the new administrator position, and (iii) set the salary for

the new position" and (2) the district court "had no authority *to tell [him] who to appoint or what salary to pay*." (Emphasis added.) Henry asserts that although a district court "may order a commissioners court to set a reasonable salary for a county employee," it "cannot itself determine what that salary is or tell the commissioners court what salary to adopt."

The Texas Constitution provides that a county commissioners court "shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed." TEX. CONST. art. V, § 18(b). The powers and duties of a commissioners court include legislative, executive, administrative, and judicial functions. *Id.* In exercising its powers and jurisdiction over county business, a commissioners court has implied authority to exercise broad discretion to accomplish the purposes intended. *Griffin*, 266 S.W.3d at 194. Along with its constitutionally derived jurisdiction over "county business," a commissioners court has specific statutory authority to oversee the fiscal operation of the county by approving and authorizing a budget. *Id.* (citing TEX. LOC. GOV'T CODE ANN. §§ 111.001–.095 (Vernon 2008)).

When making fiscal and budgetary decisions, a commissioners court exercises its legislative function. *See Agan*, 940 S.W.2d at 81; *see also Vondy*, 620 S.W.2d at 110; *Hooten*, 863 S.W.2d at 528. This legislative function, "*when properly performed*, is protected from the scrutiny of the judicial branch by the

57

constitutionally-mandated separation of powers doctrine." *Griffin*, 266 S.W.3d at 195 (emphasis added); *see* TEX. CONST. art. II, § 1 ("[N]o person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, *except in the instances herein expressly permitted*." (emphasis added)).

We note that the district court, in its order, did not expressly state the grounds upon which it relied in entering the temporary injunction against Judge Henry. Again, however, Judge Cox alleges, and the district court expressly found, that Henry had "intentionally interfered with the independence of the Galveston County [J]udiciary and [its] ability to perform its judicial functions," and, if "not enjoined," he would "continue to deny administrative support for the Galveston County courts, further interfering" with their independence and ability to function. Thus, in addressing Henry's first issue, in which he contends that the temporary injunction became moot on appeal, we noted that the district court's issuance of the injunction was in accord with the valid exercise of its inherent power to act to protect and preserve the proper administration of justice. On this ground alone, the district court has jurisdiction to address Cox's complaints against Henry. *See In re El Paso Cty. Comm'r's Court*, 281 S.W.3d at 27–28. And on this ground alone, the district court had the legal authority to issue the temporary injunction.

As noted above, the Texas Supreme Court has repeatedly explained that Texas courts have certain inherent powers, including the inherent power to compel payment of sums of money from the other branches of government if they are reasonable and necessary in order to carry out the court's mandated responsibilities. *Mays*, 755 S.W.2d at 80; *Vondy*, 620 S.W.2d at 109. Again, as emphasized by the supreme court in *Mays*:

> Like the power to punish for contempt, *a court's inherent power to compel funding flows from the law of self-preservation*. No legislative authority, state or local, can so tighten the purse strings of the judiciary's budget that it fails to provide the funds reasonably necessary for the court's efficient and effective operation. *To adhere to any contrary view would effectively concede to the legislature the power to render inoperative the judicial branch of government*. It could force the judiciary into the role of a subordinate and supplicant governmental service—in effect, a mere agency. The judiciary is not an agency, but is a constitutionally established separate, equal and independent branch of government.

755 S.W.2d at 80 (emphasis added) (citation omitted).

In *Vondy*, the Texas Supreme Court specifically held that where the law requires that compensation be provided, commissioners courts must set "reasonable" salaries. 620 S.W.2d at 108–09. There, the applicable constitutional provision required that "all justices of the peace, constables, deputy constables and precinct law enforcement officers" be compensated on a salary basis. *Id*. at 108 (quoting TEX. CONST. art. XVI, § 61). The commissioners voted not to set a salary for a newly elected constable, asserting that by setting "no salary," it had set "a salary." *Id*. at

105, 108. The commissioners argued that because the constitutional provision at issue did not mandate that they set a "reasonable" salary, and no statute mandated a minimum salary, it had the discretion to set no salary at all. *Id.* at 108. The supreme court held that the commissioners were required to compensate the county's constables. *Id.* at 110. Noting that "[t]he judicial system of this state cannot function properly if those officials who are responsible for carrying out certain duties in that process are not properly compensated." *Id.* The court explained:

> The legislative branch of this state has the duty to provide the judiciary with the funds necessary for the judicial branch to function adequately. If this were not so, a legislative body could destroy the judiciary by refusing to adequately fund the courts. The judiciary must have the authority to prevent any interference with or impairment of the administration of justice in this state.

*Id.* It further explained that "[e]ven in matters involving some degree of discretion, the commissioners court may not act arbitrarily." *Id.* at 109; *see also Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 804 (Tex. 2005) (*Vondy* demonstrates that "governmental discretion is circumscribed by the Constitution").

In addition to the general inherent powers that a court may exercise sua sponte, Texas district courts specifically have "appellate jurisdiction and general supervisory control over the County Commissioners Court, with such exceptions and under such regulations as may be prescribed by law." TEX. CONST. art. V, § 8; TEX. GOV'T CODE ANN. § 24.020 (Vernon 2004). If a commissioners court "acts beyond its authority in attempting to perform its legislative function, the supervisory

60

jurisdiction of the district court comes into play." *Griffin*, 266 S.W.3d at 195; *Hooten*, 863 S.W.2d at 528. And a district court may reverse a commissioners court order if the latter has acted "arbitrarily, capriciously, collusively, fraudulently, or otherwise in abuse of its discretion." *Griffin*, 266 S.W.3d at 195; *Hooten*, 863 S.W.2d at 528. Thus, "a district court may enjoin a commissioners court from enacting a budget that fails to provide essential funding." *Randall Cty. Comm'rs Court v. Sherrod*, 854 S.W.2d 914, 921 (Tex. App.—Amarillo 1993, no pet.) (Poff, J., concurring) ("[I]t could be said that a budget that fails to provide such essential funding is not a reasonable budget."); *see also Vondy*, 620 S.W.2d at 109–10 (where law requires compensation be provided, commissioners courts must set "reasonable" salaries). However, a district court, in reviewing a commissioners court's order under article V, section 8 of the Texas Constitution, may not substitute its judgment and discretion for the judgment and discretion of the commissioners court. *Ector Cty. v. Stringer*, 843 S.W.2d 477, 479 (Tex. 1992). If a commissioners court acts illegally, unreasonably, or arbitrarily, a "court of competent jurisdiction may so adjudge, but there the power of the court ends." *Id*.

Here, the district court's issuance of the injunction was not only in accord with the valid exercise of its inherent authority to protect and preserve the proper administration of the legal system, but it was also in accord with its supervisory

61

jurisdiction under article V, section 8 of the Texas Constitution.  Again, the district

court ruled that

- [Judge Cox] has the probable right to recover relief in his suit that *[Judge Henry] may not eliminate and attempt to control the replacement of the administrator for the courts* in Galveston County *and, then, manipulate employment terms and applicants to replace the administrator position to eliminate suitable applicants*;

- [Cox] and the courts of Galveston County are irreparably injured by the acts committed by [Henry], and will be irreparably injured by further acts, to interfere with the administrative ability of the courts to perform their judicial functions;

- the last peaceable status quo should be restored pending final trial in the case; and,

- if not enjoined, *[Henry] will continue to deny administrative support for the Galveston County courts, further interfering with the independence of the Galveston County judiciary and the ability of the Galveston County judiciary to perform its judicial functions*.

(Emphasis added.)

And, again, in regard to Quiroga's position as Galveston County DJA, the

district court specifically found that Judge Henry had "intentionally interfered with

the independence of the Galveston County [J]udiciary" and its ability "to perform

its judicial functions."  It further found that the judges, "[f]ourteen years ago," had

"selected" Quiroga as "the second director of Judicial Administration," and the

commissioners court had approved their selection.  Although the "principal duties

of Justice Administration are judicial administration," Henry unilaterally terminated

Quiroga's employment without regard to her duties to the Galveston County

62

Judiciary and without consulting with Judge Cox and the judges or advising them that he intended to terminate her employment. Henry then placed Bluemer in charge of choosing Quiroga's replacement, even though, as found by the district court, she "demonstrated a lack of knowledge about courts, administrative duties of the court, and the nature of trust and confidence necessary in any person holding this sensitive court position." And she "used standards she designed to limit the consideration to only three applicants, eliminating applicants familiar with the Galveston County courts and attorneys in good standing with the State Bar." Henry also assigned Drummond "to determine the salary for the new" DJA. And, as found by the district court, Drummond utilized a salary survey process that was "arbitrary and designed to orchestrate the salary of the replacement administrator for the courts at the lowest possible level, improperly undermining the independence of the judiciary."

The district court further found that Judge Henry's "qualification and interview process was designed to orchestrate the selection of the replacement administrator for the courts without . . . the advice or consent of the judiciary." Although he "abandoned his plan to force a hand-picked candidate as the judiciary's chief administrative officer," Henry "used the ability to set the salary for the new position at a sufficiently low salary to continue to control the hiring process." And he "attempted to stymie the effort of the judges to restore a judicial administrator by holding an emergency Commissioner's Court meeting on June 13, 2015, to create a

63

new judicial administrator position at the salary level [Henry] knew . . . the judiciary considered arbitrarily low to attract a suitable candidate."

The district court's general and specific findings support the ultimate conclusion that Judge Henry, in first purporting to terminate Quiroga's employment, and then working to reduce her salary to "a sufficiently low" level "to continue to control the hiring process," acted arbitrarily, capriciously, and beyond his authority. *See Griffin*, 266 S.W.3d at 195; *Hooten*, 863 S.W.2d at 528. And, as we noted in addressing Henry's first issue, the evidence presented at the temporary injunction hearing supports the district court's findings, which Henry does not challenge in his appeal. Deferring to the district court's resolution of conflicting evidence, we conclude that the evidence supports the district court's issuance of the temporary injunction. *See INEOS Grp. Ltd.*, 312 S.W.3d at 848; *Butnaru*, 84 S.W.3d at 211 (abuse of discretion does not occur where some evidence reasonably supports district court's decision).

We note that the district court has not entered a ruling on a permanent injunction, but only on the temporary injunction. And the scope of our review is limited to the validity of the temporary injunction. *See INEOS Grp. Ltd.*, 312 S.W.3d at 848. We further note that the district court, in its temporary injunction, did not purport to resolve the ultimate issues in this case. Rather, it simply ordered that the

64

status quo, that is, the "last, actual, peaceable noncontested status that preceded the controversy," be maintained *pending trial*. *See In re Newton*, 146 S.W.3d at 651.

Accordingly, to the extent that the district court relied upon its supervisory jurisdiction under article V, section 8, of the Texas Constitution in issuing its temporary injunction, we hold that it did not exceed that authority.

We overrule Judge Henry's third issue.

### Prior Orders

In a portion of his fourth issue, Judge Henry argues that the temporary injunction is "void" because the underlying temporary restraining order and Judge Cox's own prior orders are void.

"'A temporary restraining order is one entered as part of a motion for a temporary injunction, by which a party is restrained pending the hearing of the motion. A temporary injunction is one which operates until dissolved by an interlocutory order or until the final hearing.'" *Del Valle Indep. Sch. Dist. v. Lopez*, 845 S.W.2d 808, 809 (Tex. 1992) (quoting *Brines v. McIlhaney*, 596 S.W.2d 519, 523 (Tex. 1980)). Thus, a temporary restraining order restrains a party from acting only during the pendency of a motion for temporary injunction, i.e., until a full evidentiary hearing on the motion occurs. *Id.*; *see* TEX. R. CIV. P. 680. The expiration of a temporary restraining order renders a challenge to it moot. *See Hermann Hosp. v. Tran*, 730 S.W.2d 56, 57 (Tex. App.—Houston [14th Dist.] 1987,

no writ).   We do not review temporary orders that are moot because such a review would constitute an impermissible advisory opinion.  *See Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999).

Here, as Judge Henry himself points out in his brief, the subject of Judge Cox's prior orders and the temporary restraining order are subsumed in the temporary injunction.  Thus, even were we to conclude that Cox's prior orders and the temporary restraining order were void, this would not void the temporary injunction because the district court's issuance of the temporary injunction was based on the evidence adduced at the temporary injunction hearing.

In support of his argument, Judge Henry relies on *Ex parte Lesher*, 651 S.W.2d 734, 735 (Tex. 1983) (granting habeas relief after trial court held party in contempt for violating temporary restraining order, where trial court waived filing of bond), and *Lodispoto v. Ruvolo*, No. 05-12-01580-CV, 2013 WL 3155000, at *1 (Tex. App.—Dallas June 19, 2013, no pet.) (mem. op.) (holding trial court could not enforce void temporary injunction, where trial court did not set bond or trial date). Here, however, the district court did not issue the temporary injunction to enforce the temporary restraining order or Judge Cox's prior orders; rather, the district court issued its temporary injunction after conducting its own evidentiary hearing.

Accordingly, we hold that Judge Henry's challenges to the temporary restraining order and Judge Cox's prior orders are moot. *See Tran*, 730 S.W.2d at 57.

## Procedural Complaints

In the remaining portion of his fourth issue, Judge Henry argues that the temporary injunction is void because it does not set forth the "irreparable harm that Judge Cox will suffer absent its issuance" and the district clerk did not approve the bond set by the district court. *See* TEX. R. CIV. P. 683, 684.

The procedural requirements of rules 683 and 684 are mandatory. *Qwest Commc'ns Corp. v. AT&T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000). An order granting a temporary injunction that does not meet these requirements is "subject to being declared void and dissolved." *Id*.

Rule 683 provides, in pertinent part, as follows:

> Every order granting an injunction . . . shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order . . . .

TEX. R. CIV. P. 683. The purpose of the rule is to "'adequately inform a party of what he is enjoined from doing and the reason why he is so enjoined.'" *In re Chaumette*, 456 S.W.3d 299, 305 (Tex. App.—Houston [1st Dist.] 2015, orig.

proceeding) (emphasis omitted) (quoting *El Tacaso, Inc. v. Jireh Star, Inc.*, 356 S.W.3d 740, 744 (Tex. App.—Dallas 2011, no pet.). A trial court must, in its order granting injunctive relief, set forth specific reasons why the court deems it proper to issue the writ to prevent injury to the applicant in the interim; that is, "the reasons why the court believes the applicant's probable right will be endangered if the writ does not issue." *Id.* Mere conclusory statements or recitals of harm are insufficient. *Id*. at 305–06 (holding void temporary-injunction order merely reciting: "The Court finds . . . Plaintiff will suffer irreparable injury for which he has no legal remedy if this injunction is not granted"); *see e.g.*, *El Tacaso, Inc. v. Jireh Star, Inc.*, 356 S.W.3d 740, 747 (Tex. App.—Dallas 2011, no pet.) (conclusory statement plaintiff "will suffer an irreparable injury for which it has no other adequate legal remedy" failed to explain probable, imminent, and irreparable harm absent injunction).

Here, as discussed above, the district court's order, which is nine pages in length, sets out in specific detail the reasons for its issuance. The order explains that Judge Henry has "interfered with" the "ability of the Galveston County judiciary to perform its judicial functions" by "attempting to control the replacement of the administrator for the courts in Galveston County." And Judge Cox has "demonstrated irreparable injury if a temporary injunction is not issued," in that Henry "after keeping the [court administrator] position vacant for over eleven months," continues to "stymie the efforts of the judges to restore a judicial

68

administrator." And "if not enjoined, [Henry] will continue to deny administrative support for the Galveston County courts." Because the order adequately sets out the reasons why the district court believed that Cox's "probable rights [would] be endangered if the writ [did] not issue," we hold that the district court's order complies with rule 683. *See Chaumette*, 456 S.W.3d at 305.

Judge Henry next argues that the temporary injunction is void because the bond set by the district court was not approved by the district clerk. Rule 684 provides, in pertinent part, as follows:

> In the order granting any temporary restraining order or temporary injunction, the court shall fix the amount of security to be given by the applicant. Before the issuance of the temporary restraining order or temporary injunction the applicant shall execute and file with the clerk a bond to the adverse party, with two or more good and sufficient sureties, *to be approved by the clerk*, in the sum fixed by the judge, conditioned that the applicant will abide the decision which may be made in the cause, and that he will pay all sums of money and costs that may be adjudged against him if the restraining order or temporary injunction shall be dissolved in whole or in part.

TEX. R. CIV. P. 684 (emphasis added). The failure of an applicant to file such a bond renders an injunction void. *Benavides Indep. Sch. Dist. v. Guerra*, 681 S.W.2d 246, 250 (Tex. App.—San Antonio 1984, writ refused n.r.e.).

The record shows that the district clerk approved Judge Cox's $100 deposit in lieu of a bond that he filed in conjunction with the temporary restraining order. The district court, in issuing the temporary injunction, stated:

Bond for this temporary injunction is set at $100. Finding that [Cox] has previously posted bond in the amount of $100, such amount shall be posted as bond for this injunction. . . . On the approval of the bond, all writs are to issue.

At the hearing, the district court explained:

The bond—there was previously a hundred-dollar bond posted. The bond for the temporary injunction will be set at $100, and *the prior bond posted will be accepted as that bond by the district clerk*. The district clerk will have to approve that bond, make sure that's all done.

(Emphasis added.)

Judge Henry complains that the clerk's record does not show that the "district clerk approve[d] the bond for the temporary injunction." In support of his argument, he relies on *Ex parte Lesher*, 651 S.W.2d at 736; *MW Petroleum Corp. v. Exxon Corp.*, No. 14-96-00040-CV, 1997 WL 634159, at *7 (Tex. App.—Houston [14th Dist.] Oct. 16, 1997, no pet.); and *Diversified, Inc. v. Turner*, 650 S.W.2d 175, 177 (Tex. App.—Houston [14th] 1983, no writ).

In *Lesher*, the court held that the district court erred in *waiving* the requirement of a bond prior to issuing a temporary restraining order. 651 S.W.2d at 736. Here, the district court did not waive the posting of a bond. In *Diversified*, there was no bond on file whatsoever. 650 S.W.2d at 177. In *Exxon*, which seems to tangentially support Judge Cox's opposing position, the court held that the district court did not err in ordering that only a single bond be filed to support an injunction in a case in which multiple parties had joined seeking the injunction. 1997 WL 634159, at *7. It explained that, "as a practical matter," there was no need to secure separate bonds.

70

*Id.* The court noted that the purpose of a bond is to protect the party against whom relief is granted for damages incurred as the result of the injunction. *Id.* And it "[could] not see how allowing a single party to provide this protection lessens its effect." *Id.* As "a legal matter," the court found no authority for the contention that a bond by a single plaintiff to secure an injunction for the benefit of several plaintiffs did not satisfy the requirements of rule 684. *Id.*

As stated, the purpose of a temporary restraining order is to restrain a party from acting only during the pendency of a request for a temporary injunction, i.e., until a full evidentiary hearing on the temporary injunction occurs. *Lopez*, 845 S.W.2d at 809; *see* TEX. R. CIV. P. 680. Here, at the temporary injunction hearing, the purpose of the temporary restraining order having expired, the district court ordered that Judge Cox's prior cash deposit made in lieu of a bond supporting the temporary restraining order be retained as the bond securing the temporary injunction. *See Ex parte Coffee*, 328 S.W.2d 283, 285, 291–92 (Tex. 1959) (trial court may authorize bond filed for temporary restraining order continued as bond supporting temporary injunction). And this is not a case in which a party sought recovery on the bond given to support a temporary restraining order. We hold that the requisites of rule 684 have been satisfied.

Accordingly, we hold that the district court's injunction order is not void on the grounds that it fails to comply with rules 683 and 684.

We overrule Judge Henry's fourth issue.

## Conclusion

In sum, the district court, in entering the temporary injunction, found that Judge Henry had "intentionally interfered with the independence of the Galveston County judiciary" and its ability "to perform its judicial functions," and he would continue to do so. And the evidence presented at the temporary injunction hearing supports the district court's findings. Thus, the district court had the inherent power to enjoin Henry from further interfering with the independence of the Galveston County Judiciary and to order him to perform the actions necessary to reinstate Quiroga to her position as Galveston County DJA with her annual salary of $113,000, pending trial.

The district court, in so enjoining Henry, also acted within it supervisory jurisdiction under article V, section 8 of the Texas Constitution. Further, the district court's temporary injunction has not become moot on appeal, the district court has subject matter jurisdiction over Judge Cox's claims, and the temporary injunction is not void.

We recognize that it may seem somewhat counterintuitive to some members of the legislative and executive branches of our government that Texas courts have the inherent power to compel funding from them for essential court staff and facilities. And it may come as a surprise to some that the Texas Constitution

72

specifically grants to Texas district courts supervisory jurisdiction over county commissioners courts. However, as one of our sister court's long ago noted, "[t]hat the judicial branch of government possesses inherent power to require the legislative and executive branches to provide essential staffing and facilities for it to properly perform its judicial functions is *no longer open to serious question.*" *Dist. Judges of 188th Judicial Dist. v. Cty. Judge and Comm'rs' Court for Gregg Cty.*, 657 S.W.2d 908, 909 (Tex. App.—Texarkana 1983, writ ref'd n.r.e.) (emphasis added). Indeed, as explained by the Texas Supreme Court, without such powers, "a legislative body could destroy the judiciary by refusing to adequately fund the courts." *Vondy*, 620 S.W.2d at 110.

Texas courts should of course exercise their inherent powers and their supervisory jurisdiction over commissioners courts sparingly and carefully. They should always be mindful that "the process of allocating public resources is complex" and "[b]oth state and local legislative bodies make difficult decisions when faced with competing priorities." *Mays*, 755 S.W.2d at 82. And the legislative and the executive branches should be mindful that "unlike state agencies, courts cannot reduce services"; "[t]he judiciary can only delay or postpone the disposition of justice." *Id.* Thus, the judiciary simply cannot "permit its efficiency and progress to be stymied" by those who might "misunderstand the constitutional role and function of the judiciary as a separate, independent and equal branch of

73

government." *Id.* at 83. Although "the 'power of the purse' is a legislative power," "it is not an absolute power" and "may not be used to divest the court of its ability to function independently and effectively." *Id.*

Ultimately, as explained by the Texas Supreme Court:

Although the judiciary retains the inherent power to compel necessary funding, *a spirit of mutual cooperation is unquestionably the people's best guarantee of a constitutional government.* Rather than being a source of contention, the judiciary's insistence on its own inherent powers can open an avenue for greater cooperation among the branches of government. *Only by recognizing each other as equals can we effectively communicate.*

*Id.* (emphasis added).

We affirm the order of the district court. We dismiss all pending motions as moot.

Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Brown.

Brown, J., concurring and dissenting.